No. 97,590

In the Matter of TROY W. PURINTON, *Respondent.*

(156 P.3d 660)

Opinion filed April 27, 2007.

Frank D. Diehl, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for petitioner.

No appearance by the respondent.

*Per Curiam*: This is an original uncontested proceeding in discipline filed by the Disciplinary Administrator against the respondent, Troy W. Purinton, an attorney admitted to the practice of law in Kansas in 1999. His last registered address is Wichita. His last known residential address is in Baltimore, Maryland.

A panel of the Kansas Board for Discipline of Attorneys conducted a formal hearing as required by Kansas Supreme Court Rule 211 (2006 Kan. Ct. R. Annot. 284). Respondent did not appear. The panel concluded that the respondent had violated KRPC 1.15(a) (2006 Kan. Ct. R. Annot. 435) (safekeeping property); KRPC 8.4(c) (2006 Kan. Ct. R. Annot. 510) (misconduct); Supreme Court Rule 207(b) (2006 Kan. Ct. R. Annot. 268) (failure to respond to complaint); and Rule 211(b) (2006 Kan. Ct. R. Annot. 284) (failure to file answer to formal complaint). The panel unanimously recommended that the respondent be indefinitely suspended from the practice of law in the state of Kansas. The respondent has filed no exceptions to the final hearing report and did not appear at the hearing before us.

As found by the panel, the charges in this case arose out of respondent's conduct as an associate attorney with the Wichita firm of Fleeson, Gooing, Coulson & Kitch, L.L.C. In early 2005, a client sent the respondent a $400 check for a retainer and a $300 check for attorney fees. The respondent did not deposit these funds into the firm's trust account or operating account, but instead, cashed

the checks and converted the funds to his personal use. Subsequent events, as found by the panel, are as follows:

## "FINDINGS OF FACT

"6. In February, 2005, and March, 2005, Stephen E. Robison began to suspect that the Respondent was not completing work assigned. On Saturday, March 5, 2005, the Executive Committee of Fleeson, Gooing discussed the Respondent's billable hours, the status of assignments, and complaints made by clients. The Executive Committee sought advice from Susan Selvidge, an attorney with Fleeson, Gooing, who practices employment law. Ms. Selvidge recommended to the Executive Committee that the firm terminate the Respondent on Monday, March 8, 2005. The Executive Committee agreed and requested that Ms. Selvidge terminate the Respondent's employment.

"7. On March 7, 2005, Ms. Selvidge terminated the Respondent's employment with the firm. Thereafter, Ms. Selvidge worked to distribute the cases the Respondent had been assigned. In so doing, Ms. Selvidge came across Mr. Cummings' file. An attorney from the firm called Mr. Cummings to determine the status of the case. At that time, Mr. Cummings informed the attorney calling that he had paid the Respondent $700 for the representation.

"8. Ms. Selvidge and employees in the accounting department of the firm attempted to find a record of the payment made by Mr. Cummings. According to the firm's records, no payment had been received from Mr. Cummings.

"9. On March 8, 2006, Ms. Selvidge spoke with the Respondent by telephone. Ms. Selvidge asked the Respondent about the checks that Mr. Cummings forwarded for payment of attorney fees. The Respondent initially denied any wrongdoing. During the telephone conversation, the Respondent stated that he cashed the checks and left the cash in an envelope in the accounting department of the firm.

"10. On March 9, 2005, Ms. Selvidge forwarded a complaint to the Disciplinary Administrator's office.

"11. On March 10, 2005, the Respondent forwarded a letter of apology to the law firm. In the letter of apology, the Respondent admitted misappropriating Mr. Cummings' money.

"12. David Rapp, Chairman of the Wichita Ethics and Grievance Committee appointed Mitchell Herren to investigate Ms. Selvidge's complaint lodged against the Respondent. Mr. Rapp wrote to the Respondent, informed him that Mr. Herren had been appointed to investigate, and requested that the Respondent respond to the complaint in writing.

"13. Thereafter, Mr. Herren repeatedly contacted the Respondent by letter, phone, and electronic mail, seeking a written response to the initial complaint. On June 30, 2005, the Respondent sent Mr. Herren an electronic message apologizing for the late response and promising to provide a new telephone number.

Also in the electronic message, the Respondent stated that he admitted his wrongdoing to the law firm and that he would like to present mitigating circumstances.

"14. Mr. Herren then waited for the Respondent to provide a new telephone number. However, the Respondent did not do so. Again, Mr. Herren tried to contact him. Mr. Herren called the Respondent's mobile telephone number. According to the message that Mr. Herren heard, the mobile telephone number was 'Troy's.' The Respondent did not again contact Mr. Herren regarding the disciplinary investigation.

"15. On August 24, 2006, the Formal Complaint and Notice of Hearing were filed. On that date, the Disciplinary Administrator's office sent a copy of the Formal Complaint and Notice of Hearing to the Respondent *via* certified mail and regular mail to the Respondent's last registration address (the Fleeson, Gooing law firm). The certified mailing sent to the Respondent's last registration address was returned. The regular mailing was not returned.

"16. In addition to sending a copy of the Formal Complaint and Notice of Hearing *via* certified mail to the Respondent's last registration address, the Disciplinary Administrator's office also sent a copy of the Formal Complaint and Notice of Hearing to the Respondent *via* certified mail and regular mail, to the Respondent's residential address in Baltimore, Maryland. The certified mailing sent to the Respondent's residential address in Baltimore, Maryland, was also returned. The regular mailing was not returned.

"17. The Respondent failed to file a written Answer to the Formal Complaint."

The panel then concluded:

### "CONCLUSIONS OF LAW

"1. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.15(a), KRPC 8.4(c), Kan. Sup. Ct. R. 207(b), and Kan. Sup. Ct. R. 211(b), as detailed below:

"2. Kan. Sup. Ct. R. 215 governs service of process in disciplinary proceedings. That rule provides, in pertinent part as follows:

'(a) Service upon the respondent of the formal complaint in any disciplinary proceeding shall be made by the Disciplinary Administrator, either by personal service or by certified mail to the address shown on the attorney's most recent registration, or at his or her last known office address.

. . . .

'(c) Service by mailing under subsection (a) or (b) shall be deemed complete upon mailing whether or not the same is actually received.'

In this case, the Disciplinary Administrator complied with Kan. Sup. Ct. R. 215(a) by sending a copy of the Formal Complaint and the Notice of Hearing, *via* certified United States mail, postage prepaid, to the address shown on the Respondent's most recent registration. The certified mailing to the registered address was returned to the Disciplinary Administrator's office unopened. The

Hearing Panel concludes that the Respondent was afforded the notice that the Kansas Supreme Court Rules require.

"3.    Attorneys must safeguard client's property. KRPC 1.15(a) provides:

'A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.'

The Respondent violated KRPC 1.15(a) when he converted the fees paid by Mr. Cummings for legal services to his personal use. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.15(a).

"4.    'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Respondent engaged in conduct that involved dishonesty when he knowingly and intentionally converted the fees paid by Mr. Cummings to his personal use. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

"5.    The Kansas Supreme Court Rules require attorneys to cooperate in disciplinary investigations and to file written Answers to the Formal Complaints. Kan. Sup. Ct. R. 207(b) and Kan. Sup. Ct. R. 211(b) provide the requirements:

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.' Kan. Sup. Ct. R. 207(b).

'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.' Kan. Sup Ct. R. 211(b).

In this case, the Respondent violated Kan. Sup. Ct. R. 207(b) and Kan. Sup. Ct. R. 211(b) by failing to provide a written response to the initial complaint and by failing to provide a written Answer to the Formal Complaint. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 207(b) and Kan. Sup. Ct. R. 211(b)."

## RECOMMENDED DISCIPLINE

The hearing panel recommended that the respondent be indefinitely suspended. In making this recommendation, the panel set forth its consideration of the factors outlined in the American Bar Association Standards for Imposing Lawyer Sanctions as follows:

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty violated*. The Respondent violated his duty to his client to safeguard his client's property. Additionally, the Respondent violated his duty owed to the profession to cooperate in disciplinary investigations and prosecutions.

"*Mental State*. The Respondent knowingly violated his duties.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual harm to Fleeson, Gooing law firm and to the reputation of the legal profession, generally.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Dishonest or Selfish Motive. Converting property belonging to the law firm constitutes dishonest conduct.

"Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process. The Respondent failed to cooperate with Mr. Herren in his investigation. Additionally, the Respondent failed to file a written Answer to the Formal Complaint. The Hearing Panel, therefore, concludes that the Respondent obstructed the disciplinary proceeding.

"Indifference to Making Restitution. To date, the Respondent has made no effort to make restitution to Fleeson, Gooing for the fees he converted.

"Illegal Conduct. Converting property belonging to the law firm constitutes the crime of theft. As such, the Hearing Panel concludes that the Respondent engaged in illegal conduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Prior Disciplinary Record. The Respondent has not previously been disciplined.

"Inexperience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1999. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of five years. Accordingly, the Hearing Panel concludes that Respondent was inexperienced in the practice of law at the time he engaged in the misconduct.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.' Standard 4.12.

'Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.' Standard 7.2

. . . .

"The Deputy Disciplinary Administrator acknowledged that this case falls between indefinite suspension and disbarment. He argued, however, that the Respondent should be disbarred because he failed to cooperate in the investigation, he failed to file an Answer to the Formal Complaint, and he failed to appear at the hearing.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, and because the Respondent is only 33 years old and has not previously been disciplined, the Hearing Panel unanimously recommends that the Respondent be indefinitely suspended from the practice of law in the state of Kansas."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Landrith*, 280 Kan. 619, 636, 124 P.3d 467 (2005); Supreme Court Rule 211(f) (2006 Kan. Ct. R. Annot. 284) (misconduct to be established by clear and convincing evidence).

We conclude the panel's findings of fact are supported by clear and convincing evidence and support the panel's conclusions of law. The respondent did not file any exceptions to the panel's final report. Accordingly, the final report is deemed admitted and, further, the respondent is deemed to have conceded that the panel's findings of fact are supported by the evidence. Supreme Court Rule 212(d) and (e)(4) (2006 Kan. Ct. R. Annot. 295).

With respect to the discipline to be imposed, the panel's recommendation that the respondent be indefinitely suspended from the practice of law in the state of Kansas is advisory only and shall not prevent the court from imposing discipline greater or lesser than that recommended by the panel or the Disciplinary Administrator. See Rule 212(f).

We note that this court suspended the respondent from the practice of law on October 13, 2005, for failing to pay the annual attorney registration fee, for failing to pay the annual continuing legal education fee, and for failing to complete the required hours of continuing legal education. He remains so suspended.

We agree with the panel that indefinite suspension is the appropriate discipline to be imposed herein. We add the condition that $700 in restitution must be shown to have been paid to the injured law firm by respondent before any application for reinstatement will be considered.

IT IS THEREFORE ORDERED that Troy W. Purinton be indefinitely suspended from the practice of law, effective the date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2006 Kan. Ct. R. Annot. 243).

IT IS FURTHER ORDERED that respondent forthwith comply with Supreme Court Rule 218 (2006 Kan. Ct. R. Annot. 314), that the costs of these proceedings be assessed to the respondent, and that this opinion be published in the official Kansas Reports.